Chisholm *v.* Northern Transportation Company of Ohio.

———•••———

ROBERT CHISHOLM *vs.* THE NORTHERN TRANSPORTATION COMPANY OF OHIO.

The act of congress, of March 3, 1851, entitled " An act to limit the liability of ship owners, and for other purposes," does not apply to vessels enrolled and licensed for the coasting trade, and engaged in the transportation of freight and passengers, on the rivers and lakes; notwithstanding the exception of certain vessels, by the 7th section.

In reference to fires occurring on that class of vessels to which the statute applies, the owner is not liable for the misconduct of the officers and mariners of the vessel, in which he does not participate personally.

It is now well settled that the admiralty and maritime jurisdiction, conferred by the constitution upon the courts of the United States, extends over vessels enrolled and licensed for the coasting trade and engaged in the transportation of freight and passengers on the rivers and lakes, and over the waters traversed.

The present doctrine, as repeatedly enunciated by the Supreme Court of the United States, is, that the grant of jurisdiction, by the constitution, extends over all the navigable waters of the United States, and the vessels navigating the same.

Chisholm *v.* Northern Transportation Company of Ohio.

An action brought against the owner of a steamboat, to recover damages for the destruction of the property of the plaintiff, and injuries to his person, by a fire, whether such action be upon the contract, or for the tort, is clearly a "civil cause, of admiralty and maritime jurisdiction," within the provisions of the 9th section of the judiciary act of 1789; and as such, the proper district court of the United States has exclusive original cognizance thereof; unless the common law is competent to give the remedy.

The act of congress of March 3, 1851, is a valid enactment, under the power of the federal government to regulate commerce, or its jurisdiction over the subject of admiralty and maritime law as applicable to American vessels and waters.

The owners of vessels to which that act applies are entitled to invoke its protection in the cases to which it is applicable; and the act cannot be superseded, disregarded or set aside, by the State courts, in a case to which it applies. Hence, a proceeding to enforce the liability of vessel owners, in a case to which the act applies, calls for the administration of the act; and remedies in such a case can only be granted according to the provisions of the act.

These remedies cannot be afforded by a court of common law, which has not the methods or the machinery whereby the act can be administered. It is, therefore, a case where the common law is not competent to give the remedy, within the meaning of the judiciary act of 1789.

Such an action, being a civil cause, of admiralty and maritime jurisdiction, congress has, as it may do, in effect excluded the jurisdiction of the State courts, because it has provided a remedy for the owners of vessels, and for claimants, in such cases, which the common law is not competent to give.

An action which requires the administration of the act of 1851 can be originally brought only in the proper district court of the United States.

If, in an action brought in a State court against the owners of a vessel, to recover damages for injuries to the person and destruction of property by the act or negligence of the defendant, the claim made by the plaintiff, and the testimony adduced by him to sustain it, relate solely to such facts as the conduct of the seamen, on the voyage, &c., which do not establish that the loss arose from the personal design, or neglect, of the owners, the owners are not liable.

If the facts tend to establish that the fire by which the property was destroyed was occasioned by neglect attributable to the personal neglect of the owners, such as a fault in the construction or equipment of the vessel; yet if such defect existed without the knowledge or privity of the owners, they will only be liable to the extent and in the manner specified in the act of congress of March, 1851; except so far as that act is modified by the act of 1852. (*Oh.* 106.)

Section 41 of the act of congress, of 1852, "to amend an act to provide for the better security of the lives of passengers on board of vessels propelled wholly or in part by steam," &c., which section enacts that "all penalties imposed

Chisholm *v.* Northern Transportation Company of Ohio.

by this act may be recovered in an action of debt, by any person who will sue therefor, in any court of the United States," must be construed as referring to the specific pecuniary penalties for the acts and neglects specified in the statute.

Where the liability sought to be enforced against the owners of a vessel is not a penalty, within the meaning of that section, and the act prescribes no remedy for the enforcement of such liability, although the liability be founded upon a statute of the United States, and the cause of action is a civil cause, of admiralty and maritime jurisdiction; yet, as the remedy sought is one which can be afforded by the common law, and as the State courts are not, expressly or by necessary implication prevented from entertaining the action, and the statute which creates the liability prescribes no remedy, the liability to the extent specified in the act of 1852, may be enforced by action in a State court proceeding according to the course of the common law.

The liability of the owner of the vessel, under the 30th section of the act of 1852, is limited to damage sustained by the "*passenger* or his *baggage*," and has no reference to shippers of freight. The damage to the passenger, intended by the act, is an injury to his person.

The act is not, therefore, inconsistent with the provisions of the act of 1851, so far as shippers, and property other than baggage, are concerned.

Where a portion of the property lost by the plaintiff, by fire upon a steamboat, was described as his "baggage," and he also alleged injury to his person; and the jury found that the person of the plaintiff was injured; that a large amount of his property on board the vessel was destroyed; that these damages were occasioned by the neglect of the defendant; but they did not specifically assess the damages for the injury to the plaintiff's person or the loss of his baggage; nor did they find that the negligence of the defendant which they found, was a neglect to comply with any of the provisions of the act of 1852 alleged in the complaint; and it did not appear from the record but that the neglect referred to in the special verdict might have been some of the other acts which were admitted as evidence of negligence; *Held* that the cause must be remanded for a new trial.

And that on such new trial, the evidence of negligence must be confined to neglect to comply with the provisions of the act of 1852, and to "known defects or imperfections in the steaming apparatus, or the hull;" some one or all of which had caused the disaster. And that the damages recovered must be confined to the damages sustained by the plaintiff through the injury to his person and the loss of his baggage.

APPEAL from a judgment for the plaintiff, on a verdict rendered at the Jefferson circuit, and from an order denying a new trial on the minutes. The facts are sufficiently stated in the opinion of the court.

*Mr. Starbuck,* for the appellant.

In charging the jury, the court instructed them that as to the property lost, other than money, the plaintiff was entitled to recover, "because the defendant, as common carrier, is liable therefor; because the law of 1851 does not exempt him from such liability. That whether there was negligence or not, the plaintiff is entitled to recover such damages as, upon the evidence, he has sustained to his person in consequence of that disaster." That the act of congress of March 3, 1851, entitled "An act to limit the liability of ship owners, and for other purposes," had nothing to do with the question of the defendant's liability. The court, though requested, refused to charge that if the money was lost through the negligence of the officers or crew, the defendant is not liable therefor, and is exempt from such liability by virtue of the act of March 3, 1851; and also refused to charge that the defendant was not liable for the money ($4060) if the plaintiff did not deliver a note in writing of the true character and value of said money, and have the same entered on a bill of lading therefor; and also refused to charge that this vessel, enrolled and licensed for the coasting trade on the northern lakes, &c., was not excluded from the provisions of the act of March 3, 1851. It also refused to charge that the defendant was not liable for any damage to the plaintiff's baggage unless caused by the design or neglect of the defendant; and also the like refusal as to the plaintiff's property lost, other than baggage.

I. The act of congress, passed March 3, 1851, entitled "An act to limit the liability of ship-owners, and for other purposes," was applicable to the *Wisconsin,* and exempted the owners from liability to the plaintiff, unless his loss was caused by their design or neglect.

No owner of any vessel shall be liable for any loss or damage to any goods or merchandise whatever, caused by and fire on board such vessel, unless such fire is caused by

the design or neglect of such owner. (*See act of March* 3, 1851; 9 *Stat..at Large*, 635 ; 1 *Brightly's Dig. p.* 834, *title Ships and Shipping, No.* 49.) See also the *N. J. Steam Nav. Co.* v. *The Merchants' Bank*, (6 *How.* 344,) where the defendant was held liable, contrary to the proposition above submitted. This decision, made in 1848, led to the enactment of the statute of 1851, above cited. The intent was to change the rule followed in 6 *Howard*, and in this case, and as the act expresses in its title, to *limit* the liability of ship owners. The provision in section 7 of the act of 1851, excluding from the protection of that act vessels "used in rivers, or inland navigation," does not apply to vessels navigating the great northern and western lakes. (*Moore* v. *Am. Trans. Co.*, 24 *How.* 1.) It is therefore confidently submitted that the *Wisconsin*, navigating the great lakes from Ogdensburgh to Chicago, was strictly within the protection of the act of congress; and hence that the court below, in persistently ruling that that act had no application to this case, committed an error fatal to this judgment.

II. The carelessness or negligence of the master, officers or mariners, tending to cause the fire by which the plaintiff sustained damage, is not to be imputed to the defendant, as the "design or neglect" of the owner, within the meaning of the statute, unless it is shown that such owner is personally guilty of the particular act of negligence complained of. See sec. 6 of act of 1851, and 1 *Brightly*, 835, where it is provided that notwithstanding that act, the master, officers, &c., shall remain liable for *their* negligence. " We are of opinion that in reference to fires occurring on that class of vessels to which the statute applies, the owner is not liable for the misconduct of the officers and mariners of the vessel, in which he does not participate personally. (*Walker* v. *The Trans. Co.*, 3 *Wallace*, 153.) This being the law applicable on this point, it seems quite clear that the court erred in receiving evi-

dence under exception: 1. As to overloading the yawls. 2. As to what the captain, engineer and fireman said and did at Clayton. 3. As to noise, &c., on the propeller. 4. As to insults, and being in liquor, &c. 5. That no officer was on duty. 6. Also in refusing to strike out testimony on subject of intoxication. In this case the owner is a foreign corporation, many hundreds of miles distant from the scene of this disaster. It was therefore an absolute impossibility for the owner to participate personally in the misconduct complained of; and yet this testimony has been put into the case, under exception, to conduct the jury to the conclusion reached by them, viz., that the owner was guilty of negligence.

III. Upwards of $4000 of the recovery in this case, is for the loss of money, alleged by the plaintiff to have been in his possession, on board, when the vessel was burned. The plaintiff did not give to the master, nor to any agent of the defendant, any note in writing, of the true character and value of the alleged money, and did not have the same entered on the bill of lading. This omission on the part of the plaintiff, exempted both owner and master from all liability for loss of the money. All that the plaintiff claims on this point, is that he applied for a check for a certain box, and he says he called it a "money box." He also says the captain said they did not give checks on board, and told him to take the box to his room and take care of it. The officers of the boat deny that even this occurred. The court refused to strike out the claim to recover for the money, and held that the defendant was liable therefor, and this alleged liability is the basis of more than one half of the verdict. The judgment should be reversed, for error in the ruling above referred to. "If any shipper  *  *  *  of bills of any bank or public body,  *  *  *  shall lade the same on board any ship or vessel, without, at the time of such lading, giving to the master, agent or owner of the ship or vessel receiving the same, a

Chisholm *v.* Northern Transportation Company of Ohio.

note in writing, of the true character and value thereof, and have the same entered on the bill of lading therefor, the master and owner of said vessel shall not be liable as carriers thereof, in any form or manner. Nor shall any such master or owner be liable for any such valuable goods beyond the value, and according to the character thereof, so notified and entered." (*Act of March* 3, 1851, § 2. 1 *Brightly's Dig.* 834.) In this case the court has accepted the vague call for a check for a box called a "money box," and the alleged reply, in the place of compliance with the above positive statute. This will not do. The statute was intended to "limit the liability of ship owners," by relieving them from the peril of just such parol testimony as has been here given against them. Such ruling as has been here made, if upheld, will be an effectual repeal of one of the most important and salutary provisions of this statute. We are aware it has been held that the absence of this "note in writing" will not be fatal to a plaintiff, "where the true character and value have been fairly and clearly set down on the bill of lading;" but no case can be found where a plaintiff, knowing the character and value, has been permitted to recover where he did not communicate that knowledge. (*Wattson* v. *Marks*, 2 *Am. L. R.* 157, *cited in* 1 *Brightly's Dig.* 834, *note b.*) This point, and the considerations in its support, lend additional force to the first point above stated. How is it possible to uphold this judgment, in the face of the persistent ruling that the act of 1851 had no application in this case?

IV. Aside from the rights secured to the defendant by the act of March 3, 1851; and bringing the case to the test of the common law as administered by the courts of this State, we fail to see how the ruling admitting the conversation had at Clayton, between the captain, the engineer and the fireman, can be upheld. If the defendant is liable for the careless act of the men on the boat, it is the act

itself, and not prior talk about it, that creates the liability. Suppose these men did declare, half a day before the disaster, that their purpose was to do a particular careless act. Then suppose the disaster followed, and there is no proof as to what caused it, is it to be tolerated that that talk of the employees may be given in evidence as the confession of the defendant—distant from there a thousand miles—that the disaster was caused by the careless act so declared to be in contemplation? The evidence was, as the court cannot fail to perceive, very damaging on a jury trial. It was, as we submit, clearly incompetent. For this erroneous ruling, alone, the judgment should be reversed.

V. We think it has already been conclusively shown, that the ship owner is not liable for any misconduct of the master or mariners, in which misconduct such owner does not participate personally. Such is the act of March 3, 1851, and such is the express letter of the decision of the United States Supreme Court already cited. Still, the reason assigned by the court for admitting the conversation had at Clayton, is that "it affords the presumption that the man was negligent about the thing itself." We submit that in any aspect of the case this is fatally erroneous. (*See Act of March* 3, 1851, § 1; 1 *Brightly's Digest*, 834; *Walker* v. *The Trans. Co.*, 3 *Wall.* 153.)

VI. There is no proof in the case tending to show that this ship owner had any knowledge of the intoxication complained of, or even any knowledge that any person on the boat ever used intoxicating drink. It was therefore in no sense "misconduct" in which the owner "participated personally." Hence the court erred in refusing to strike out and withdraw from the consideration of the jury, the evidence on the subject of intoxication. (*See authorities cited under the 5th point.*)

VII. A carrier of passengers is never liable as an insurer. He is answerable for negligence only. In charging the jury, the court said: "The plaintiff is not entitled to re-

Chisholm *v.* Northern Transportation Company of Ohio.

cover damages for the loss of his money, unless there was negligence. As to his property, other than money, I charge you as a matter of law, he is entitled to recover, because the defendant, as common carrier, is liable therefor; because, in my judgment, the law of 1851 does not exempt him (the defendant) from such liability, and because the loss was not caused by the act of God or by public enemies. And I charge you that, whether there was negligence or not, upon the evidence in this case, the plaintiff is entitled to recover such damages as upon the evidence he has sustained to his person in consequence of that disaster." See 2 *Greenl. on Ev.* 214, § 222, for a full collection of cases holding the liability of a carrier of passengers as stated in this point. Again, the court in instructing the jury that a carrier is in some cases an insurer of property, erroneously illustrates by saying the carrier is just as much responsible for such property, " as for the safety of the passenger himself." We think there will be no serious attempt, on this argument, to defend these rulings.

VIII. The force of the 7th point will not be broken by the allegation that the jury found the fact of negligence; or that it nowhere appears that any recovery has been had for injury to the plaintiff's person, and hence that the errors here under discussion have not prejudiced the defendant. To this the answer is: 1. It is shown in the statement that $777.46 of the verdict is for personal injury. 2. The necessary influence upon the jury, of such erroneous instructions, upon so important a point, is to make them believe the fact of negligence a wholly unimportant matter; and thus lead them capriciously to find upon the question without any special regard to the sufficiency of the evidence. 3. As has been shown, there is in the whole case hardly one word of competent evidence tending to establish the fact of negligence, as against this defendant. It will hardly do to grope through such mazes of error to

the erroneous conclusion of negligence, and then plead these errors and their result in avoidance of the still greater error of the judge in holding that the defendant, as a carrier of passengers, is liable for personal injuries without any proof of negligence.

*E. C. James*, for the appellant.

(Upon questions arising under the constitution and laws of the United States.)

This case is exclusively within the jurisdiction of the federal courts, because it is a case of admiralty and maritime jurisdiction, in which the common law is incompetent to give a remedy.

I. It is a case of admiralty jurisdiction. The admiralty jurisdiction extends to all things done upon or relating to the sea, to transactions relating to commerce and navigation, to damages and injuries upon the sea and all maritime contracts, torts and injuries. (*De Lovio* v. *Boit*, 2 *Gallison*, 468. *Steamboat Josephine*, 39 *N. Y.* 22.) The term "torts," in admiralty jurisdiction, includes wrongs suffered in consequence of the negligence or malfeasance of others, where the remedy at common law would be an action on the case. (*P. W. and B. R. R. Co.* v. *P. and H. de G. S. T. Co.*, 23 *How.* 209.) The admiralty jurisdiction in cases of tort depends entirely on locality, but the exception which formerly existed in respect to cases happening on waters within the body of a county is no longer permitted to prevail. (*Id.* 215. *Waring* v. *Clark*, 5 *How.* 464.) A passenger may recover in admiralty for personal injuries received by the explosion of a steamboat's boiler, occurring on a river within the body of a county. (*Steamboat New World* v. *King*, 16 *How.* 469.) The *locus*, or territory of maritime jurisdiction, where torts must be committed, and where business must be transacted, in order to be maritime in their character, extends not only to the main sea, but to all navigable waters of the United States, or bordering

Chisholm *v.* Northern Transportation Company of Ohio.

on the same, whether land-locked or open, salt or fresh, tide or no tide. (*N. E. M. I. Co.* v. *Dunham*, 11 *Wallace*, 1. *The Eagle*, 8 *id.* 15. *The Genesee Chief*, 12 *How.* 443.)

II. Cases of admiralty jurisdiction are exclusively in the federal courts, except those in which the common law is competent to give a remedy. The first section of the third article of the constitution of the United States is as follows: "The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the congress may from time to time ordain and establish." And the first clause of the second section of the same article is in these words: "The judicial power shall extend * * to all cases of admiralty and maritime jurisdiction." It has been decided that in all cases to which the judicial power of the United States extends, congress may rightfully vest that jurisdiction exclusively in the federal courts. (*The Moses Taylor*, 4 *Wall.* 411. *Martin* v. *Hunter*, 1 *Wheat.* 337.) But by the ninth section of the judiciary act of 1789, congress has enacted that "the district court shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, * * saving to suitors in all cases the right to a common law remedy where the common law is competent to give it." (1 *U. S. Stat. at Large, pp.* 76, 77.) Under this act the courts hold that in all cases of admiralty and maritime jurisdiction where the common law is competent to give a remedy, that remedy may be pursued either in the State or federal courts, as the suitor may elect and the circumstances justify. (*The Belfast*, 7 *Wall.* 642. *Leon* v. *Galceron*, 11 *id.* 185.) But in all cases of admiralty and maritime jurisdiction, when the common law is not competent to give a remedy, such as proceedings *in rem*, which never existed at common law, or remedies provided by act of congress, or cases where the acts of congress have taken away the common law remedy and substituted a recovery dependant wholly upon the provisions of the act, the juris-

diction is solely in the district courts of the United States, exclusive of every other court, State or national. (*The Moses Taylor,* 4 *Wall.* 411. *The Hine* v. *Trevor, Id.* 555. *The Belfast,* 7 *id.* 624. *Leon* v. *Galceron,* 11 *id.* 185. *Steamboat Josephine,* 39 *N. Y.* 25.) The act of 1845, extending the admiralty jurisdiction over the lakes and navigable waters connecting the same, (5 *U. S. Laws,* 726,) was passed under a mistake as to the character and extent of admiralty jurisdiction, and is inoperative. (*The Eagle,* 8 *Wall.* 15.) Unless, therefore, there is a case where the common law is competent to give the remedy, the State court has no jurisdiction over it.

III. In this case the common law was never competent to give a remedy. The defendant is a foreign corporation. At common law a foreign corporation was a nonentity. The courts of this State had no common law jurisdiction over or power to render judgments *in personam* against it. The proceeding against a foreign corporation, though termed an action, is merely a proceeding *in rem;* and it can be instituted by the persons and for the causes prescribed by the statutes of this State. (*Whitehead* v. *B. and L. R. R. Co.,* 18 *How. Pr.* 232, 233. 2 *R. S.* 459. *Code,* § 427.) It may be said that in such cases if there is a voluntary appearance by the defendant, the common law can give a remedy. This may be true, but unless there is a voluntary appearance the common law is wholly incompetent. Hence the case is not within the exception in the act of congress, which saves only those remedies which the common law of itself is competent to give, unaided by any statute, or the adventitious circumstances of a voluntary appearance.

IV. The common law remedy in these cases, against the owner of the vessel, is taken away by the act of congress of March 3, 1851. (9 *U. S. Stat. at Large,* 635.) The decision of the Supreme Court of the United States in the case of the *Lexington,* a steamer belonging to the New Jersey

Steam Navigation Company, which was burned on Long Island Sound in 1840, led to this act of 1851. That decision was rendered at the January term, 1848; and the corporation which owned the vessel was there held liable for the loss of about $18,000 in specie, shipped on board. The case was in many respects similar to this. (*N. J. Steam Nav. Co.* v. *Merchants' Bank,* 6 *How.* 344.) To take away this common law liability of the owner of the vessel, congress passed this act of March 3, 1851, modeled upon 53 Geo. III, cap. 159, which had been enacted in 1812, for a precisely similar purpose. (*Moore* v. *Am. Trans. Co.,* 24 *How.* 1. *Walker* v. *The Trans. Co.,* 3 *Wall.* 150.) The Supreme Court of the United States have decided that this act applies to the propellers of the transportation companies navigating the great lakes. That the exception contained in the seventh section has no application to them. (*Id.*) And it has also decided that the first section exempts the owner, in cases of loss by fire, from all liability for the negligence or misconduct of his agents, servants and employees, in which he does not participate personally. (*Walker* v. *The Trans. Co.,* 3 *Wall.* 150.) It is clear that this act has accomplished the purpose intended, and wholly destroyed the common law liability of the owner; and, necessarily, the common law remedy falls with the liability upon which it depended. The owner is no longer liable as at common law for all losses except those which occur by act of God or the public enemy. He is not liable as a carrier in any form or manner for money lost, unless the requirements of the second section of the act are complied with. He is not liable for any loss of goods or merchandise by fire, unless the fire is caused by his personal design or personal neglect. And by the third section of the act he is not liable "for any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred," without his "privity or knowledge," beyond his interest in the value of the vessel and the freight pending. And, even then,

when several owners of property suffer in the loss, and the value of the vessel and freight is not sufficient to pay all, as is the case here, then by the fourth section of the act, the owner has the privilege of surrendering his interest in the vessel and freight to a trustee, to be appointed by the court for that purpose, and thereupon all claims and proceedings against the owner cease. The suits are then all changed into proceedings *in rem.*

Since the passage of this act the common law remedy against the owner has ceased to exist. And as the ninth section of the judiciary act of 1789 has vested the jurisdiction of this case exclusively in the district court, saving only the common law remedy, when the common law is competent to give it, the case is no longer within the exception, and the State courts have no jurisdiction over it.

Of necessity, the jurisdiction of this case, since the passage of this act, is exclusive in the federal courts. The judicial power of the federal courts extends to all cases arising under the laws of the United States. (*Const. art.* 3, § 2.) It is plain that if a concurrent jurisdiction is to be exercised by the State courts, they have either got to administer this act of congress, or else deprive the ship owner of the protection which it affords. They certainly cannot strike down this shield which the federal laws have interposed for his security. And it is clear that they cannot administer this act. For, assuming that several persons who suffer in the loss bring actions in the courts for as many different States, how is the owner to avail himself of the privileges given him by this act; which court is to appoint the trustee; and how are the several suitors to proceed after the trustee is appointed and all proceedings against the owners have thereby ceased? Plainly, this theory of concurrent jurisdiction of cases under this act in the State courts leads to manifest absurdity.

V. The inspection act of August 30, 1852, section 30, does not restore the common law remedy. On the 30th

Chisholm *v.* Northern Transportation Company of Ohio.

day of August, 1852, congress passed "An act to amend an act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam," generally known as the steamboat inspection act, whereby, after providing for the manner of construction, equipment and inspection of passenger boats propelled by steam, it was enacted as follows: Section 30. "And be it further enacted, that whenever damage is sustained by any passenger or his baggage, from explosion, fire, collision, or other cause, the master and the owner of such vessel, or either of them, and the vessel, shall be liable to each and every person so injured, to the full amount of damage, if it happens through any neglect to comply with the provisions of law herein prescribed, or through known defects or imperfections of the steaming apparatus; and any person sustaining injuries through the carelessness, negligence or willful misconduct of an engineer or pilot, or their neglect or refusal to obey the provisions of law herein prescribed as to navigating such steamers, may sue such engineer or pilot, and recover damages for any such injury, caused, as aforesaid, by any such engineer or pilot." Section 44. "And be it further enacted, that all parts of laws heretofore made, which are suspended by and are inconsistent with this act, are hereby repealed." (10 *U. S. Stat at Large*, 72.) This act is confined to the damages sustained by the passenger, or his baggage, and has no application to money or other property not included by the term "baggage," put on board the steamer; and hence, if applicable at all to this case, is applicable only to the claim which is made for personal injuries and loss of baggage. But it is plain that the remedy under this act is not a common law remedy. It depends wholly on the terms of the act; and hence the federal courts have exclusive jurisdiction of cases arising under it. Here there is no proof made that the damage happened through any neglect to comply with the provisions of the inspection

act, or through known defects, or imperfections in the steaming apparatus. No such question was submitted to the jury; and no finding made by them in regard to it. The proof, on the contrary, showed that the inspection act was complied with. But if this were otherwise, it would not give jurisdiction to the State courts, for they have jurisdiction only to award remedies in cases where the common law is competent to give them, not in cases arising under, or dependent on, the laws of the United States.

VI. Errors in the charge and refusals. The charge that the defendant was liable for the chattels, as a common carrier; that it was liable for the money on proof of negligence; that it was liable for the plaintiff's injuries without proof of negligence; that the act of March 3, 1851, had nothing to do with the case; and the refusals to charge that the propeller came under the provisions of the said act; and the refusal to charge that the defendant was not liable except as provided by said act, were each and all erroneous, and in direct conflict with the decisions of the Supreme Court of the United States in similar cases. (*Moore* v. *Am. Trans. Co.*, 24 *How.* 1. *Walker* v. *The Trans. Co.*, 3 *Wall.* 150.) The judgment must, therefore, be reversed. But as the case is one of which the State courts have no jurisdiction, the order, instead of granting a new trial, should dismiss the complaint.

Since the foregoing points were prepared, the case of *Brookman* v. *Hamill*, (43 *N. Y.* 554,) has been published, in which the Court of Appeals holds that whenever admiralty jurisdiction exists over the subject matter of the controversy, it is exclusive, subject only to the proviso in the act of 1789, which saves to suitors the right to a common law remedy in cases where the common law is competent to give it. And that the exclusive character of this jurisdiction is not confined by said act to maritime liens, but extends to all civil causes of admiralty and maritime jurisdiction. (*Pages* 561, 562.) It also holds that the question

Chisholm *v.* Northern Transportation Company of Ohio.

of jurisdiction may be raised for the first time on appeal, and on it appearing that no jurisdiction exists, final judgment of nonsuit must be given. (*Pages* 564, 565.) At pages 558, 559, Judge Rapallo mentions a class of cases, with reference to vessels navigating the lakes and rivers, in which State jurisdiction is preserved by the act of February 26, 1845. The learned judge overlooks the fact that, by the decision of the Supreme Court, in *The Eagle,* (8 *Wall.* 15,) this act of 1845 was declared inoperative and of no effect, and the distinction between admiralty cases on the lakes, within said act, and admiralty cases elsewhere, was declared no longer to exist. As this decision is not mentioned in the opinion, and is more recent than any decision of the Supreme Court cited by the learned judge, it is to be presumed his attention was not called to it.

See also the decision in *Beard* v. *Daly,* just rendered, at general term of third department, at Schenectady, November, 1871.

*John F. Seymour* and *F. Kernan,* for the respondent.

I. The rulings of the court, to the admission and exclusion of testimony, which were excepted to, were right. Those exceptions were not well taken, and show no good reason for compelling another trial of the case. The act of 1851 has no application to this case. 1. The contract was made in Montreal, where no such limitation was claimed, and there is no evidence of the existence of such a law there. (*Whitford, adm'r, &c.,* v. *The Panama R. R. Co.,* 23 *N. Y.* 465.) 2. The respondent was not a shipper, within the intent and meaning of the act of 1851. 3. That act did not apply to this vessel, which, at this time, was used in river navigation. (1 *Brightly's Dig.* 835, §§ 56, 57.) 4. Section 5 of that act was not intended to permit the owners of vessels to be guilty of actual negligence, without thereby incurring liability, but only to relieve them from the liability of carriers, which is a liability without any

negligence on their part. 5. If the owners of vessels intend to avail themselves of such a special limitation of liability, they must plead it. The only issue of limitation of liability presented in the answer of the appellant, is the allegation of an actual agreement at Brockville, at the time of the exchange of tickets. This was disproved. 6. The other issues, which were of actual negligence, having been subsequently found by the jury against the appellant, it cannot shelter itself under an act which only relieved it from liability where there was no negligence.

II. The appellant's exceptions to the judge's charge to the jury were not well taken. There were two exceptions to the charge. The first exception was based upon the assumption that he had charged, that the St. Lawrence, and the place where the accident occurred, are not within the protection of the act of 1851. This assumption was not warranted, and no such charge is found in the case. The second exception to the charge was on the theory that the judge had charged the jury that the defendant was liable for the loss of the plaintiff's property, other than money, and for the personal injury to the plaintiff, without proof of negligence. (*a.*) This exception had no footing. The judge had, before then, submitted to the jury four written questions, to which an affirmative answer could not be made without a finding of the fact of negligence, covering all the plaintiff's property, and all his injuries, including those embraced in the appellant's exception; and the appellant's exception is met by this finding of actual negligence. Again, the judge, in accordance with the appellant's request, also charged the jury in these words : "The jury are to judge of all the circumstances proved on both sides, and then say whether or not it is established, that the fire happened by fault of the defendant or not." (*b.*) It was not true that the judge so charged as to property. He charged, that unless there was negli-

gence on the part of the defendant, the plaintiff could only recover for the ordinary baggage of a traveller. (*Howland* v. *Willetts,* 9 *N. Y.* 171, 174. 8 *Wend.* 109, 111.) (*c.*) Assuming the act of congress of 1851 applies to this case, it is a conclusive answer to any claim of exemption under this act, that all the proofs of negligence required under it were given, and so found by the jury. (1 *Brightly,* 834, § 49.) (*d.*) The 30th section of the act of congress of 1852, provides that whenever damage is sustained by any passenger, or his baggage, from fire, the owner of the vessel shall be liable to each person so injured, to the full amount of damage, if it happens through any neglect to comply with the provisions of that act, or through known defects, or imperfections, of the steaming apparatus, or hull. (1 *Brightly,* 858, § 57 ; *also* §§ 13, 14, 15, 16, *pp.* 849, 850.) This act applies to this case. (*Pages* 848, 849, §§ 8, 11, 12.) It was proved that the damage to the person and baggage of the respondent was occasioned by neglect to comply with the provisions of the act.

III. The refusal of the judge to charge the jury the ten written propositions, as requested by the appellant's counsel, was right. (*a.*) Four of these propositions, namely, the 4th, 6th, 7th and 9th, he charged as a whole, except that he held that the act of 1851 made no difference in the determination of the question in the 4th and 9th, he having charged, in both of those, that the appellant was not liable unless guilty of negligence. (*b.*) The other propositions were so framed that he could not charge them as a whole, consistently with the law and facts of the case. (*Carpenter* v. *Stilwell,* 1 *Kern.* 61.) Proposition No. 1 was unwarranted, because, 1. That no such exemption is set up in the appellant's answer, or by notice. (*Redfield on Negligence.*) The issues are inconsistent with such a defense. 2. That the contract was made with a foreigner at Montreal, where no such law prevails, as to the lakes or river St. Lawrence. (*Whitford, admin'r,* v. *Panama R. R.*

*Co.,* 23 *N. Y.* 465.    *Merchants' Bank* v. *Spalding,* 9 *id.* 58.)
3. That the fire commenced in the St. Lawrence, between
ports, where the appellants were present by agents.
(1 *Brightly,* 835, § 56.)   4. The act of 1851 does not relate
to the carriers of passengers, but to carriers of freight.
(1 *Brightly,* 834, § 49.)   5. That the 30th section of the
subsequent act of 1852, overrules that of 1851, by provid-
ing that owners of vessels shall be liable for personal in-
juries, and to the full amount of baggage, for any neglect
to comply with its provisions, whether that be the neglect
of the owners, or others.   In this case the respondent
averred and proved, and the jury found the appellant
guilty of the neglect.   (1 *Brightly,* 858, § 57.)   6. That
all the property the respondent had on board, except
money, was properly baggage, and was so considered by
the terms of the Montreal ticket, allowing 1000 pounds
of baggage, given to a party known to the appellant's
agent to be moving to the west with his family.   The
proper amount of baggage varies with the circumstances
of each case.   (*Merrill* v. *Grinnell,* 30 *N. Y.* 594.   *Nevens*
v. *Bay State Steam. Co.,* 4 *Bosw.* 225.   *The H. M. Wright,*
1 *Newb. Adm.,* 494.)   It is competent for the parties to
agree to the amount of baggage by weight, as in this case.
(*Gurley* v. *Newton,* 10 *How. Pr.* 490.)   7. The request to
charge in this first proposition is too broad, and was
therefore properly refused.   (*Carpenter* v. *Stilwell,* 1 *Kern.*
61.)   8. The judge having, before then, submitted to the
jury written questions, whether all the property of the
respondent, shipped on board the " *Wisconsin,*" was, or
was not, destroyed by the neglect of the appellant, cover-
ing the whole question of neglect in proposition No. 1,
and the jury having passed upon that very question, all
possible error was cured, and the finding of the jury on
that precise point takes away all pretext for a new trial,
in order to have them again pass upon the question of
neglect.   If any error was committed in refusing to charge,

Chisholm v. Northern Transportation Company of Ohio.

it was cured by the finding of the jury, that all loss and damages which happened to all goods and baggage of the respondent, taken on board the appellant's propeller, was through the actual neglect of the appellant, thus taking away the foundation of that proposition, which was, that the fire happened without the design, or neglect, of the appellant. Upon proposition 8th, the judge charged the jury, that if the loss of the money did not occur through the negligence of the appellant, the respondent could not recover for it. The judge had, before then, charged the same thing, in addition to submitting to the jury the written question, whether or not that money was lost through the appellant's negligence. It could make no difference then, whether the act of 1851 applied or not. The actual negligence took the case out from under that act. This is practically conceded in the 1st, 2d, 3d, 4th, 8th and 9th propositions, each one of which contains an exception against the appellant, in case negligence, or design, is found against the company. This is not the case of a merchant who sends a box on board ship without giving notice of its contents, but of a passenger who comes on board with his baggage, and gives all the notice in his power. The act of 1851 relieves against liability as carriers only, which is a liability without negligence. It does not relieve the appellant from liability for negligence, such as was proved and found against the appellant in this case. (*Wright* v. *Norwich and N. Y. Transp. Co.*, U. S. Circuit Court for District of Conn., decision of Woodruff, J. See *Wells* v. *Steam Navigation Co.*, 4 Selden, 375. Sherman & Redfield on Negligence, 352, § 10.)

IV. The act of March 3, 1857, does not exempt the owners of a vessel from liability when the " fire is caused by the design, or neglect, of such owner, or owners;" and the question of fact as to negligence on the part of the appellant having been submitted to the jury upon the proofs presented by both parties, and having been found

by the jury against the appellant, that question is definitely settled, and with it the question of liability.

V. The rulings of the justice were correct. No error was committed on the trial, and the judgment is just and equitable, and should be affirmed.

*By the Court,* TALCOTT, J.    The defendant is an Ohio corporation, sued as the owner of the propeller *Wisconsin,* which was an American vessel, enrolled and licensed for the coasting trade, and which took fire on' the evening of the 21st of May, 1867, was run upon Grenadier Island, in Lake Ontario, and burned to the water's edge. The vessel was one of a line owned by the defendant, engaged in the transportation of passengers and freight between Ogdensburgh, in the State of New York, and intermediate ports, and Chicago.

The fire is assumed to have occurred on Lake Ontario, within the territorial limits of the county of Jefferson, in the State of New York, it being so alleged by the plaintiff in his complaint, and substantially admitted in the answer. The plaintiff, with his family, was a passenger upon the vessel, at the time of her destruction, and had with him his household furniture and other property, and a large amount of money, in United States legal tender notes and specie. He had been a resident of Lower Canada, and was, with his family and all his property, on his route emigrating to the State of Missouri. As a result of the destruction of the vessel, the plaintiff's wife and four of his children were drowned, and all his property was destroyed, except a trifling amount consisting of melted specie, afterwards recovered from the hull of the vessel, and the plaintiff himself received some personal injury. The plaintiff made the contract for the transportation of himself and his family and property, with an agent of the defendant, stationed at Montreal, and the contract was for the transportation from Ogdensburgh to Chicago. The

Chisholm *v.* Northern Transportation Company of Ohio.

plaintiff, however, for his own convenience, went upon the vessel, with his family and property, at Brockville, a Canadian port, at which the vessel touched on its route, after leaving Ogdensburgh.

The action was brought to recover damages for the destruction of the property of the plaintiff, and the injury to his person, and the plaintiff had a verdict for $7300, which was the amount the jury, as it must be assumed, fixed as the value of his property destroyed, including $4000 in United States legal tender notes, and the damage sustained by the plaintiff from his personal injury.

The voluminous case and bill of exceptions contains numerous exceptions to the rulings of the court in relation to the admissibility of evidence, and to the rulings of the court on questions of law, most of which it is unnecessary to consider. The fundamental question presented, is as to the effect upon the case of the legislation of congress. The defendant, at various stages of the case, and in various forms, sought to invoke the application of the act of congress of March 3, 1851, entitled "An act to limit the liability of ship owners, and for other purposes." The court, however, ruled that the act in question had no application to the case, apparently upon the ground that the action was for negligence, and was sought to be maintained by proof of negligence. The ruling was in effect that if the jury should be satisfied that the fire and loss were attributable to negligence, whether of the owners, or their servants, the master and mariners, then the act had no application to the case, and the defendant was liable as a common carrier, upon the principles of the common law; and much evidence was admitted touching the intoxication and other conduct of the master and hands upon the voyage, and at the time of the disaster.

The act of congress of 1851, referred to, provides, in the first section, that " no owner or owners of any ship or vessel shall be subject or liable to answer for, or make

good to any one or more persons, any loss or damage which may happen to any goods or merchandise, whatsoever, which shall be shipped, taken in or put on board any such ship or vessel, by reason or by means of any fire happening to or on board the said ship or vessel *unless such fire is caused by the design or neglect of such owner or owners.*"

The third section of the same act provides that the liability of the owner or owners of any ship or vessel, " for any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners, respectively, in such ship or vessel, and her freight then pending."

By the sixth section of the act it is provided " that nothing in the preceding sections shall be construed to take away or affect the remedies to which any party may be entitled against the *master, officers or mariners*, for or on account of any embezzlement, injury, loss or destruction of goods, wares, merchandise, or other property put on board any ship or vessel, or on account of any negligence, fraud, or other malversation of such master, officers, or mariners, respectively."

The seventh section of the act provides that the act shall not apply to the owner or owners " of any canal boat, barge, or lighter, or to any vessel of any description whatever used on rivers or inland navigation."

The claim of the defendant is, to exemption arising under an act of congress. The Supreme Court of the United States is the ultimate arbiter of the question, where the claim is denied, and its decisions upon the subject are binding and conclusive upon the State courts. The questions arising as to the applicability to the case at bar, having been distinctly decided in the Supreme Court of the United States, it will be necessary, in this court, only to refer briefly to those decisions.

That the act of 1851 does not apply to vessels of the

Chisholm *v.* Northern Transportation Company of Ohio.

character of, and engaged in the navigation and business in which the propeller *Wisconsin* was engaged, notwithstanding the exception of certain vessels by the seventh section, was distinctly decided in the case of *Moore* v. *The American Transp. Co.*, (24 *How. U. S.* 1.) It was reiterated in *Walker* v. *The Transportion Company*, (3 *Wall.* 150.)

The plaintiff, in his complaint, alleged divers acts of negligence and misconduct on the part of the master, officers and crew of the vessel, and divers misrepresentations by the defendants' agent at Montreal, concerning the seaworthiness and qualities of the vessel, and, against the objection of the defendant, gave a variety of evidence tending to show that the fire and the loss thereby occasioned, occurred and was greatly aggravated by the want of skill, negligence and misconduct of the officers and crew, upon the voyage.

Apparently, the learned justice, at the circuit, applied to the act of 1851 the common law rule, that the act or neglect of the agent, within the scope of his employment, is the act or neglect of the principal, and considered the statute as having been designed only to relieve the owners of vessels, as carriers, from their common law liability as insurers, against all except the act of God or public enemies. He held that the act did not apply to a case where actual negligence on the part of the owner, or any of his servants or agents, was relied upon; and that the words of the first section, "unless said fire is caused by the design or neglect of such owner or owners," embraced the design or neglect of the agents, servants and employees of the owners. Although this might, upon the first impression, seem to be the reasonable and just construction of the language in question, the ruling must have been otherwise, had the attention of the court been called to the case before referred to, of *Walker* v. *The Transportation Company*, (3 *Wall.* 150.) In that case the precise

point was presented and adjudicated. The substance of the decision being thus summed up in the opinion delivered: "We are therefore of the opinion that in reference to fires occurring on that class of vessels to which the statute applies, the owner is not liable for the misconduct of the officers and mariners of the vessel, in which he does not participate personally." That decision, it will be noticed, was made in a case where a corporation (The Western Transportation Company, a New York corporation,) was the owner, and sued as such.

It is manifest, therefore, that in view of these authoritative interpretations of the act of 1851, the ruling of the court below was erroneous.

By the third section of the act, the liability of the owner "for any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred without the privity or knowledge" of such owner, is limited to the value of the interest of the owner in the ship and her freight then pending. This, by its terms, includes cases of fire, and assumes that the owner may be liable for acts or omissions which have occurred without his knowledge or privity, notwithstanding the provisions of the first section. But there is a difficulty in the case beyond what has been discussed.

It is now well settled that the admiralty and maritime jurisdiction, conferred by the constitution upon the courts of the United States, extends over vessels of the character of the *Wisconsin*, and over the waters where this disaster occurred; and that such jurisdiction was conferred by the first section of the third article of the constitution, and in no manner depends upon the act of 1845, which was enacted under the then prevalent idea, in accordance with previous decisions, that the maritime jurisdiction of the courts of the United States was limited to localities within the ebb and flow of the tide. The present doctrine, as repeatedly enunciated by the Supreme Court of the United States, is that the grant of jurisdiction by the constitution

Chisholm v. Northern Transportation Company of Ohio.

extends over all navigable waters of the United States, and the vessels navigating the same. (*See The Genesee Chief*, 12 *How.* 443 ; *The Hine* v. *Trever*, 4 *Wall.* 555; *The Eagle*, 8 *id.* 15; *N. E. Mu. Ins. Co.* v. *Denham*, 11 *id.* 1.)

Though the jurisdiction, as conferred by the constitution upon the courts of the United States, is not, by the terms of that instrument, declared to be exclusive, yet it is acknowledged that the jurisdiction may, by congress, be rendered exclusive. (*Martin* v. *Hunter's Lessee*, 1 *Wheat.* 337. *The Moses Taylor*, 4 *Wall.* 411.) This is admitted by the court of last resort in this State. (*In re, the Steamboat Josephine*, 39 *N. Y.* 19. *Brookman* v. *Hummill*, 43 *id.* 554.)

Congress, by the judiciary act of 1789, enacted that the district courts of the United States shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, saving to suitors the right to a common law remedy where the common law is competent to give it. This has been held to have effectually excluded the State courts from all jurisdiction in such cases, except where the common law affords a remedy; so that State statutes which have been enacted, providing remedies in the State courts which are not afforded by the common law, but only by courts of admiralty, are, as applied to cases which are within admiralty and maritime jurisdiction, unconstitutional and void. (*See cases before cited.*)

In admiralty, the term "torts" includes wrongs suffered in consequence of the negligence or malfeasance of others, where the remedy at common law is by action on the case. (*Phila. &c. R. R. Co.* v. *Phila. &c. Steam Tow Boat Co.*, 23 *How. U. S.* 209.)

The jurisdiction of courts of admiralty in matters of contract, depends upon the nature and character of the contract, but in torts it depends entirely on locality. Judge Mason, delivering the opinion of the Court of Appeals, in the case of the *Steamboat Josephine*, before cited, says, the terms "admiralty and maritime jurisdiction, according to

etymology and received use, extend to all things done upon and relating to the sea, to transactions relating to commerce and navigation, and to damages and injuries upon the sea, and all maritime contracts, torts and injuries." (39 *N. Y.* 22.)

Whether, therefore, the action, in this case, is upon the contract, or for the tort, it is clearly a " civil cause of admiralty and maritime jurisdiction," within the provisions of the ninth section of the judiciary act of 1789, and as such the proper district court of the United States has exclusive original cognizance thereof, unless the common law is competent to give the remedy. " It is not a remedy in the common law courts which is saved, but a common law remedy." (*The Moses Taylor*, 4 *Wall.* 411.)

The act of 1851, section 3, limits the liability of the owner " for any act, matter or thing, loss, damage or forfeiture done, occasioned or incurred without the privity or knowledge" of the owner, to the value of the interest of such owner in the ship and pending freight. While it is, perhaps, true, that any defect in the construction or fitting of the ship and its appurtenances, by means whereof loss or damage is occasioned, is to be attributed to the negligence of the owner, notwithstanding the construction which the federal court has put upon the exemption in the first section, yet even in that case, the owner is only liable to the value of his interest in the ship and freight, unless he has knowledge of, or is privy to, the defect.

The fourth section provides for the case where loss or destruction of property shall be suffered by several freighters or owners of property on the same voyage, and the whole value of the ship and freight shall not be sufficient to make compensation to each of them, by enacting that they shall receive, from the owner of the ship, compensation *pro rata ;* and it provides that, for that purpose, the owners of the property lost and the owners of the ship, or any of them, may take the appropriate proceedings in any

Chisholm *v.* Northern Transportation Company of Ohio.

court, for the purpose of apportioning the sum for which the owners of the ship shall be liable, amongst the parties entitled thereto. The same section provides, furthermore, that it shall be deemed a sufficient compliance with the act, if the owners of the ship shall transfer their interest in the vessel and freight, for the benefit of the claimants, to a trustee to be appointed by any court of competent jurisdiction, to act as trustee for the persons who may be legally entitled thereto, "from and after which transfer all claims and proceedings against the owner or owners shall cease."

It appears from the case, that there must be a considerable number of persons entitled to make claims against the owners of the *Wisconsin,* in consequence of the disaster in question, if any one is entitled; some of whom, besides the plaintiff, had commenced actions, and others had employed attorneys to prosecute their claims. And it is evident that the owners, if liable at all, must be liable for a very large amount. No evidence was given touching the value of the interest of the defendant in the vessel or the pending freight. The court had, before the opening of the defense, ruled, in effect, that the act of 1851 had no application to the case.

Section 4 of the act contemplates the calling in of all claimants, whether they shall have commenced actions or not, for the purpose of adjusting their respective claims, and the apportionment, *pro rata,* among them of the amount for which the owners are liable, under the act. It contemplates the discharge of the owner from all actions and claims upon the assignment of his interest in the vessel and freight to a trustee, who is, it must be assumed, to collect the pending freight, realize the value of the interest in the vessel, and to make distribution of the proceeds among the claimants, after the validity and amount of their respective claims shall have been, in some manner, under the direction of the court, settled and adjudicated.

The act of 1851, as is settled, is a valid enactment, under

the power of the federal government, to regulate commerce, or its jurisdiction over the subject of admiralty and maritime law, as applicable to American vessels and waters. The owners of vessels, to which this act applies, are entitled to invoke its protection in the cases to which it is applicable, and the act cannot be superseded, disregarded or set aside, by the State courts, in a case to which it applies. A proceeding, therefore, to enforce the liability of vessel owners in a case to which the act applies, calls for the administration of the act; and remedies, in such a case, can only be granted according to the provisions of the act.

These remedies cannot be afforded by a court of common law, which has not the methods or the machinery whereby the act can be administered. It is, therefore, a case where the common law is not competent to give the remedy, within the meaning of the judiciary act of 1789. Such an action being a civil cause of admiralty and maritime jurisdiction, congress has, as it has been shown it may do, in effect excluded the jurisdiction of the State courts, because it has provided a remedy for the owners of vessels, and for claimants in such cases, which the common law is not competent to give.

The proceedings required in the administration of the act of 1851 are such as are used in courts of admiralty, and are in accordance with the practice and methods of procedure in such courts, and also, to a great extent, of courts of equity. But the act of 1789 does not save remedies in equity, but only remedies existing at the common law. It seems plain, therefore, that an action which requires the administration of the act of 1851, can be originally brought only in the proper district court of the United States.

If, therefore, the claim made by the plaintiff, and the testimony adduced by him to sustain it, had related solely to such facts as the conduct of the seamen on the voyage, &c., which did not establish that the loss arose from the personal design or neglect of the owners, then the owners

were not liable. If the facts tended to establish that the fire was occasioned by neglect, which is to be attributed as the personal neglect of the owners, such, perhaps, for example, as some fault in the construction or equipment of the vessel; yet, if this defect existed without the knowledge or privity of the owners, they would only be liable to the extent, and in the manner specified in the act of 1851, (except so far as that act is modified by the act of 1852, which will hereafter be considered;) and the remedy could not be afforded by a court of common law. Were it not, therefore, for the provisions of the act of 1852, it would be necessary to dismiss the suit, as was done by the Court of Appeals in the case of *Brookman* v. *Hummill*, (43 *N. Y.* 554.)

In 1852 an act of congress was passed (*ch.* 106) entitled "An act to amend an act to provide for the better security of the lives of passengers on board of vessels propelled wholly or in part by steam, and for other purposes." That act contains numerous regulations relating to the construction, equipment, inspection and licensing of passenger boats propelled by steam. By the 30th section of this act it is provided " that whenever damage is sustained by any *passenger, or his baggage,* from explosion, *fire,* collision or other cause, the master and owner of such vessel, or either of them, and the vessel, shall be liable to each and every person *so injured,* to the full amount of damage, if it happens through any neglect to comply with the provisions of law herein prescribed, or through known defects or imperfections in the steaming apparatus, or of the hull."

The 44th section enacts " that all parts of laws heretofore made, which are superseded by or are inconsistent with this act, are hereby repealed." The provision of the 30th section, which makes the owners liable for the "full amount" of the damage sustained by the passenger or his baggage, is clearly inconsistent with such parts of the act of 1851 as limits the owner's liability to the value of his

interest in the vessel; and the declaration, that such liability is absolute, provided the damage arises from any neglect to comply with the provisions of the act of 1851, which make it requisite to the liability that the neglect to which the damage is to be attributed should be the personal neglect of the owner, and which limit the liability, even where the owner is liable, in the cases where the act or neglect is without his privity or knowledge.

The complaint contains sundry allegations, apparently based on the act of 1852, of omissions to comply with its provisions, and which are expressly stated to have been contrary to the provisions of the statutes of the United States. For example : The act of 1852 requires (§ 3) that every such vessel " shall have not less than three double-acting forcing pumps with chamber at least four inches in diameter, two to be worked by hand and one by steam, if steam can be employed, otherwise by hand; one whereof shall be placed near the stern, one near the stem, and one amidship, each having a suitable, well-fitted hose, of at least two-thirds of the length of the vessel, kept at all times in perfect order and ready for immediate use."

The complaint alleges that there was no steam forcing pump on board the vessel, and only two hand forcing pumps, and " that the hose carried on said propeller for use of said pumps was not of the length required by law, and was old, rotten and leaky, and would not hold or convey water, but was entirely insufficient and useless for the extinguishment of fires on board said vessel," &c. The complaint also alleges that the burning of said propeller, and the consequent destruction of life and property, would have been prevented if the vessel had been supplied with suitable and serviceable pumps and hose as required by the statutes of the United States. Evidence was given on the trial tending to sustain these allegations.

So far as the action was based upon the allegation of neglect to comply with the provisions of the act of 1852,

Chisholm *v.* Northern Transportation Company of Ohio.

it was an action upon the statute. But where the action upon the 30th section of the statute of 1852 is *in personam*, the common law is competent to afford the remedy. Where an action is to enforce a right created by statute, if the statute prescribes a remedy, that specific remedy, and no other, can be pursued. If, however, the statute prescribes no remedy, resort may be had, for its enforcement, to the common law, where that can afford an adequate remedy. (*Dudley* v. *Mayhew*, 3 *Comst.* 9.) Section forty-one, of the statute in question, enacts that " all penalties imposed by this act may be recovered in an action of debt by any person who will sue therefor in any court of the United States." The statute imposes various specific pecuniary penalties for certain specified acts and neglects, and it is to those specific penalties that the 41st section must be construed as referring.

The liability sought to be enforced in this action is not a penalty, within the meaning of the provision, and the act prescribes no remedy for the enforcement of the liability in question. Therefore, though the liability be founded upon a statute of the United States, and the cause of action is a civil cause of admiralty and maritime jurisdiction, yet, as the remedy sought is one which can be afforded by the common law ; as the state courts are not expressly, or by necessary implication, prevented from entertaining the action, and the statute which creates the liability prescribes no remedy, the liability to the extent specified in the act of 1852, may be enforced by action in a state court proceeding, according to the course of the common law.

The liability, however, under the 30th section of the act of 1852, is limited to damage sustained by the "*passenger*, or *his baggage.*" The damage to the passenger, intended by the act, is doubtless the injury to his person. As the title indicates, the general object of the act was the better

protection of the lives of passengers, and has no reference to shippers.

If it had been intended to embrace all loss, or damage, occurring to any description of property on board, belonging to a person who happened also to be a passenger on board, the liability for *baggage* would not have been specifically declared. The act is not, therefore, inconsistent with the provisions of the act of 1851, so far as shippers, and as property, other than baggage, are concerned. The word baggage, as mentioned in the act of 1852, must receive the ordinary construction applied to that term.

A portion of the property lost by the plaintiff, on the occasion of the disaster, is described as his baggage, and he also alleges injury to his person. The jury has specifically, and in answer to the interrogatory submitted to them by the court on that subject, found that the person of the plaintiff was injured. They have, in like manner, found that a large amount of his property on board the vessel was destroyed. They have found these damages to have been occasioned by the neglect of the defendant, but they have not specifically assessed the damages for the injury to the plaintiff's person, or the loss of his baggage; neither have they found that the negligence of the defendant, which they found, was a neglect to comply with any of the provisions of the act of 1852, alleged in the complaint; and it does not appear from the record but that the neglect referred to in the special verdict, may have been some of the other acts which, under the ruling of the court, were admitted as evidence of negligence on the part of the defendant, such as the conduct of the sailors, &c. The cause must therefore be remanded for a new trial, on which the evidence of negligence must be confined to neglect to comply with the provisions of the act of 1852, and to "known defects, or imperfections, in the steaming apparatus, or the hull;" some one, or all, of which have caused the disaster; and the damages recov-

The People *v.* Board of Governors of Albany Hospital.

ered must be confined to the damage sustained by the plaintiff through the injury to his person, and the loss of his baggage.

Judgment reversed, and a new trial granted, costs to ·abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, March 5, 1872, *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]