CRAIG, Adm'r, *v.* CONTINENTAL INS. CO.

*(Circuit Court, E. D. Michigan.* February 8, 1886.)

1. SHIPPING—LIMITED LIABILITY ACT—WRECKED VESSEL.
   The act limiting the liability of the owners of vessels applies to a vessel in a wrecked condition, though she be incapable of self propulsion, or of carrying a cargo.

2. SAME—KNOWLEDGE AND PRIVITY OF WRECKING MASTER OF INSURANCE COMPANY.
   The "knowledge and privity" of the wrecking master of an insurance company is not the knowledge and privity of the corporation so far as to charge it with responsibility for his negligence beyond the value of the vessel.

On Motion for a New Trial.
The facts of this case were substantially as follows:

Plaintiff was the administrator of the estate of John Carbry, deceased, who, at the time of his death, was the engineer of a steam-pump on the barge Enterprise. On November 20, 1883, while upon a voyage from Sarnia to Lake Superior, the Enterprise went ashore upon Green island, in the northern part of Lake Huron. While in that condition she was abandoned to her underwriters, of which defendant was one. These underwriters were represented by Crosby & Dimock, general insurance agents at Buffalo. Upon receiving notice of the loss, Crosby & Dimock sent word to Capt. Rardon, their wrecking master, to organize an expedition and go to her relief. Rardon was what is called a marine inspector of four insurance companies, represented by Crosby & Dimock. Among his other duties was that of rescuing wrecked vessels and getting them to a port of safety. He carried a card, upon the back of which were the printed names of four insurance companies known as the "Big Four," one of which was the Continental. The face of this card contained his name and the words "Marine Inspector." Upon receiving these instructions he hired the tug Balize and certain steam-pumps, and went to Green island. Upon arriving there, he found the Enterprise had been lying 10 or 12 days upon the beach, got her off without great difficulty, and started to take her to Detroit. John Carbry, the plaintiff's intestate, was the engineer of the steam-pump, and in the immediate employ of the owner of the pump. About half way down the lake, and off Pointe Aux Barques, the Enterprise suddenly filled, and sank with all on board.

The plaintiff claimed that Rardon was negligent in attempting to cross the lake at this season of the year, without having made a more

thorough examination of the vessel's condition before setting out. He recovered a verdict for $8,000, and the defendant moved for a new trial.

*F. H. Canfield,* for the motion.

*Don M. Dickinson,* for plaintiff.

BROWN, J. The most important question in this case, and one which goes to the entire merits of the plaintiff's claim, arises upon the request of the defendant to charge that the limited liability act is a complete bar to the action. This act, which, so far as it is applicable to this case, is embodied in Rev. St. § 4283, declares that "the liability of the owner of any vessel, for any * * * act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending." It is conceded in this case that the Enterprise became the property of the defendant by virtue of the abandonment, and that she became a total loss at the time of the death of Carbry. If the act applies to this case, it follows that the liability of the defendant was extinguished by the sinking of the vessel. There is no doubt that when the loss is total this fact may be pleaded, and no proceedings under the statute are necessary. *The Scotland,* 105 U. S. 24.

It was suggested upon the argument that the statute did not apply to a vessel in the condition of the Enterprise; but this objection is without force. She was still a vessel, though seriously injured by the stranding, and was in a condition to do damage to other property. It certainly cannot be the law that the owner loses the protection of the act the moment his vessel goes ashore, and that he must abandon her then at the peril of waiving this defense.

It is further insisted, however, that the act does not apply, as the negligence was not without the privity or knowledge of the owner. This position assumes that the knowledge and privity of Rardon was that of the insurance company; in other words, that he stood in the position of owner to this vessel. Upon the trial of this case I felt very grave doubt as to the soundness of this proposition, but decided to give plaintiff the benefit of this doubt, that the question might be more carefully considered upon motion for a new trial. None of the reported cases are decisive. Few of them throw any light upon the point. It was held in *Walker* v. *Transportation Co.,* 3 Wal. 150, that the owners of the vessel were entitled to the benefit of the act, notwithstanding the negligence of their officers and crew; in other words, that the negligence of the owner must be a personal negligence; but the question who is the person whose negligence shall deprive a corporation owner of the benefit of the act was not considered. This ruling was followed in *The Whistler,* 2 Sawy. 348, and in *Chisholm* v. *Northern Transp. Co.,* 61 Barb. 363. Such is also the

ruling of the English courts. *Wilson* v. *Dickson*, 2 Barn. & Ald. 2–13; *The Warkworth*, 9 Prob. Div. 20. In *Lord* v. *Goodall*, 4 Sawy. 292, it was said that when the owner is a corporation, the privity or knowledge of the managing officers of the corporation must be regarded as the privity and knowledge of the corporation itself; citing *Philadelphia, etc., R. Co.* v. *Quigley*, 21 How. 202, and *Hill Manuf'g Co.* v. *Providence, etc., S. S. Co.*, 113 Mass. 495, wherein it was said, in reference to this act, that "if the owners are a corporation, the president and directors are not merely the agents or servants, but the representatives, of the corporation, and the acts, intentions, and negligence of such officers are those of the corporation itself."

These appear to be the only cases in which the point is alluded to. If the question were whether Rardon was a fellow-servant of Carbry, in such sense as to make the corporation responsible to the plaintiff for his negligence, we should have no hesitation in saying, upon the authority of *Hough* v. *Railway Co.*, 100 U. S. 213, and *Chicago, etc., R. Co.* v. *Ross*, 112 U. S. 377, S. C. 5 Sup. Ct. Rep. 184, that he was not. But in this class of cases the question is not one of exemption, but of limitation of liability. The act does not contemplate that the owner shall be exempt from liability by reason of the negligence of his servants, but that his liability shall be limited to his interest in the vessel, unless his personal negligence shall have contributed to the loss. Rardon was not an officer of the corporation. He was not its general agent. He was the marine inspector or wrecking agent of four companies, of which the defendant was one. He was not even employed directly by the corporations, but by Crosby & Dimock, their general agents at Buffalo; and, so far as the record shows, neither the president nor the directors of these corporations had any knowledge of his appointment. His powers were no greater than those of the master of a vessel, whose authority to employ assistance when his ship is stranded is beyond dispute. If the owner had been an individual instead of a corporation, it would have seemed clearer that Rardon did not stand in his place, but the law applicable to the case would be the same. We are entirely clear, in our opinion, that the case is within the act, and that the judgment should be for the defendant.

The verdict will be set aside, and a new trial granted.